975 A.2d 284

**Kathy FERGUSON**

**v.**

**Georgia Bohlayer LODER, et al.**

**No. 873, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

July 7, 2009.

708

Robert J. Zarbin (The Jaklitsch Law Group, on the brief), Upper Marlboro, and James K. Macalister, Baltimore, for appellant.

David E. Beller (Douglas F. Gansler, and Philip H. Lohrey, Office of the Atty. Gen., on the brief), Baltimore, for appellee.

Panel: JAMES R. EYLER, WRIGHT and KEHOE, JJ.

JAMES R. EYLER, Judge.

In this appeal we consider whether a tort action, filed within the general three year statute of limitations, may proceed against the State of Maryland ("State") when the State is made a party to the suit after the three-year filing deadline specified by the Maryland Tort Claims Act ("MTCA"). Kathy Ferguson, appellant, filed a tort action in the Circuit Court for Baltimore City against State employee Georgia Bohlayer Loder, appellee, within three-years after the cause of action accrued. Loder moved to dismiss, arguing that she was entitled to qualified immunity. Ferguson then amended her complaint to add the State as a defendant, but did so after the MTCA's three year deadline for filing a tort action against the State. Consequently, the circuit court dismissed both the State and Loder, based on tort immunity.

Ferguson does not dispute Loder's immunity on appeal, rather, she contends that her suit should have proceeded against the State on three distinct grounds: (1) Maryland Code (2008 Repl. Vol.), § 9–902(d) of the Labor and Employment Article ("LE") extends the MTCA's filing deadline by two months; (2) an amendment substituting the State for its employee relates back to the original filing date; and (3) the action substantially complied with the MTCA because the State had notice of the claim and the Attorney General's office answered the complaint on behalf of Loder within the three-year deadline.[1]

---

1. These theories are reflected in the following questions presented by Ferguson:

> 1) Whether [LE § 9–902(d)] extends the deadline to file suit in third party actions against the State of Maryland.
> 2) Whether amending by interlineations to substitute the State for its employee relates back to the date the lawsuit was filed.

For the reasons that follow, we conclude that the theories suggested by Ferguson for tolling the MTCA's three-year filing deadline lack merit, and therefore, we shall affirm the judgment.

## Facts and Proceedings

On March 1, 2005, Ferguson was driving northbound on Washington Boulevard when a vehicle driven by Loder allegedly ran a red light and struck Ferguson. At the time of the collision, Loder was a State employee, operating a State-owned vehicle in the course of her employment. On March 11, 2005, the State Treasurer received a letter from counsel for Ferguson giving notice of her intent to bring a personal injury claim "as a result of negligence [by a State agent, servant, and/or employee]."

Before filing her negligence action, Ferguson pursued a workers' compensation claim. Once that claim was resolved, Ferguson entered negotiations with the State on her personal injury claim, and ultimately rejected a settlement offer.

On December 13, 2007, Ferguson filed a single count negligence action against Loder. The State was not named in the complaint, and Loder was not identified as a State employee. The Attorney General's office, acting on behalf of Loder, filed an answer on January 29, 2007, which included a defense of immunity.

On March 12, 2007, the Attorney General's office filed a motion to dismiss or for summary judgment on behalf of Loder, arguing that Loder enjoyed qualified tort immunity under Maryland Code (2004 Repl. Vol., 2008 Supp.), § 12–101 *et. seq.* of the State Government Article [2] ("SG") and Maryland

---

3) Whether filing a lawsuit against a State employee within three years for tortious conduct committed in the course of State employment substantially complies with the MTCA, if the State Attorney General enters his appearance within three years of the date of the accident.

**2.** The MTCA is codified in Title 12, Subtitle 1 of the State Government Article.

Code (2006 Repl. Vol., 2008 Supp.), § 5–522 of the Courts and Judicial Proceedings Article ("CJ"). The timing of this motion—approximately a week and a half after the three year anniversary of the collision—was significant because the MTCA requires that a party bringing an action against the State file suit within three years after the cause of action arises. SG § 12–106(b).

Ferguson responded by filing an amended complaint on March 14, 2007, naming the State as a defendant, specifying that Loder was acting within the scope of her employment with the State, and adding a count against the State for negligent entrustment. Ferguson also filed a "Motion to Substitute Party by Interlineation" on March 26, 2007, in which she argued that LE § 9–902(d) extended the MTCA's three year deadline by sixty days, and that the amendment adding the State merely corrected a misnomer. The State moved to dismiss the amended complaint or for summary judgment on the ground that Ferguson failed to meet the MTCA's three-year filing deadline.[3]

At the conclusion of a hearing on May 30, 2008, the circuit court granted the motion to dismiss the amended complaint.[4] First, the court distinguished the conditions precedent for suit under the MTCA from a statute of limitations, and found that the sixty day extension under LE § 9–902(d) applied only to the latter. Second, the court found that the amended complaint did not correct a misnomer but instead added a new party and, thus, did not relate back to the original complaint. Finally, the court found that the substantial compliance argument advanced by Ferguson was insufficient "in this particular context." This appeal followed.

---

3. Loder also joined in the motion, and repeated her claim of qualified immunity under the MTCA.

4. The circuit court denied the original motion to dismiss at a prior hearing on April 21, 2008, finding that Ferguson's amended complaint rendered the motion moot.

## Standard of Review

In reviewing a motion to dismiss, "our task is confined to determining whether the trial court was legally correct in its decision to dismiss." *Zimmer–Rubert v. Bd. of Educ.*, 179 Md.App. 589, 593, 947 A.2d 135 (2008) (citation omitted). In doing so, "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party," and "will only find that dismissal was proper if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Id.* (citations and internal quotation marks omitted).

## Discussion

Enacted in 1981, the MTCA waived the State's sovereign immunity from tort actions, subject to certain conditions and limitations. SG § 12–104(a)–(b); *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753 (1993). These conditions and limitations include the requirements set forth in SG § 12–106(b):

A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 3 years after the cause of action arises.[5]

The sole focus of this dispute is the three year deadline for filing set by SG § 12–106(b)(3). Both parties acknowledge that § 12–106(b)(3) "is not a statute of limitations," but is instead "a condition precedent to the initiation of an action under the [MTCA]." *See Johnson v. Md. State Police*, 331

---

**5.** *Condon*, 332 Md. at 492–94, 632 A.2d 753, and *Candelero v. Cole*, 152 Md.App. 190, 194–96, 831 A.2d 495 (2003), provide a legislative history of the time limitations in SG § 12–106(b).

Md. 285, 290, 628 A.2d 162 (1993) (citations and quotation marks omitted). *Rios v. Montgomery County*, 386 Md. 104, 872 A.2d 1 (2005), explained the distinction as follows:

> We have previously defined a condition precedent as a condition attached to the right to sue at all. It operates as a limitation of the liability itself as created, and not of the remedy alone. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right. Conversely, a statute of limitations affects only the remedy, not the cause of action. A condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied. This requirement of strict or substantial compliance with a condition precedent is of course subject to abrogation by the General Assembly....

*Id.* at 127–28, 872 A.2d 1.

As a result of this distinction, the Court of Appeals has repeatedly held that statute of limitations tolling principles are inapplicable to conditions precedent. *See, e.g., State v. Sharafeldin*, 382 Md. 129, 148, 854 A.2d 1208 (2004) (holding that the State cannot waive its sovereign immunity in contract actions where the claimant fails to file within the one year deadline); *Waddell v. Kirkpatrick*, 331 Md. 52, 59–60, 626 A.2d 353 (1993) (holding that a condition precedent to a wrongful death action cannot be tolled by laws directed at the general statute of limitations prescribed by CJ § 5–101); *Johnson*, 331 Md. at 290, 628 A.2d 162 (holding that the tolling provision in CJ § 5–201–the general tolling provision applicable to minors-does not apply to the time period for filing a claim under the MTCA). Ferguson concedes as much, but asserts that her theories are not grounded in statute of limitations tolling jurisprudence. We now address each of these theories in detail.

### 1. *Labor and Employment Article § 9–902(d)*

Ferguson first contends that LE § 9–902(d) extends the MTCA's three year deadline by two months. Title 9,

subtitle 9 of the Labor and Employment Article addresses actions against third parties for injuries covered by worker's compensation. The statute gives parties paying a worker compensation claim the exclusive right to sue a responsible third party for a period of two months after an award of compensation. LE § 9–902(c). Accordingly, LE § 9–902(d) suspends the limitations period applicable to the injured worker's cause of action during the time when the payor has the exclusive right to sue: "The period of limitations for the right of action of a covered employee or the dependents of the covered employee against the third party does not begin to run until 2 months after the first award of compensation made to the covered employee or the dependents under this title."

Ferguson argues that this provision should be read broadly as applying to all time-restricted rights, not just statutes of limitations. Specifically, Ferguson asserts that the use of the more general term "limitations" (as opposed to "statute of limitations"), and the preceding phrase "for the right of action," demonstrates a legislative intent to extend both time restricted remedies and rights. Ferguson notes that this reading is consistent with the legislature's mandate that MTCA "be construed broadly, to ensure that injured parties have a remedy." SG § 12–102; *Condon*, 332 Md. at 496, 632 A.2d 753. Ferguson also observes that the Court of Appeals has referred to the MTCA's conditions precedent as "limitations," thus suggesting a correlation between the "limitations" on an MTCA action and the limitations tolled by LE § 9–902(d). *See Magnetti v. Univ. of Md.*, 402 Md. 548, 563, 937 A.2d 219 (2007); *Sharafeldin*, 382 Md. at 139, 854 A.2d 1208.

The State responds with two points. First, the State argues that reading LE § 9–902(d) in conjunction with the preceding subsection "makes clear [an intent] to ensure that the employer, the insurer, or the fund of self-insured employer retain the exclusive right to sue a responsible third party for the first two months after the claimant's first award of compensation," and does not provide a mechanism for claimants to "circumvent" the MTCA's filing deadline. Second, the State argues that the tolling provision in LE § 9–902(d) applies only to the

general three-year statute of limitations on civil actions set forth in CJ § 5–101, and not the three-year condition precedent in the MTCA. The State supports the latter argument by citing *Hayes v. Wang*, 107 Md.App. 598, 669 A.2d 771 (1996), where we stated that LE § 9–902(d) operates "[a]s an exception to the general three-year statute of limitations involving a tort complaint." *Id.* at 599, 669 A.2d 771.

Whether the legislature intended LE § 9–902(d) to apply to conditions precedent is not clear from the plain language of the statute. "Where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986) (citations omitted). We also "may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Id.*

The interpretive aids offered by Ferguson are of little assistance. The legislative mandate to construe the MTCA broadly has no application to our interpretation of LE § 9–902(d), which is contained in an entirely different act. We also give no weight to Court of Appeals' references to conditions precedent as "limitations." *Sharafeldin*, which Ferguson cites for this proposition, explained the use of this term while addressing the counterpart statute to the MTCA for contract actions against the State:

Perhaps keying on the word "limitations" used by the [Report of the Governor's Commission to Study Sovereign Immunity], but without any documented critical analysis, the Legislature used that word in the title to the bill. The descriptive title stated the purpose of the bill to be to provide that the State and its various units may not raise the defense of sovereign immunity in the courts of this State in an action in contract based on certain written contracts,

and "to set forth certain exclusions and limitations applicable to such actions."

Several "exclusions and limitations" were provided in the bill: the waiver applied only to breaches of written contracts executed by an official or employee acting within the scope of his/her authority; there would be no liability for punitive damages; and the action was barred if not filed within the one-year period. The best that can be said for this, from Sharafeldin's point of view, is that the Legislature used the word "limitations" as a generally descriptive term that probably included the requirement of bringing suit within one year, but not in the technical sense of a true statute of limitations. In *Frankel v. Board of Regents,* 361 Md. 298, 308, 761 A.2d 324 (2000), we referred to § 12–202 as providing a "period of limitations," again as a generally descriptive term, and in [*Baltimore County v. RTKL Associates,* 380 Md. 670, 846 A.2d 433, (2004) ], we referred to a similar statute, applicable to actions against chartered counties, as a statute of limitations but noted that we did so as a matter of convenience and expressed no view whether it, or its counterparts, such as § 12–202, 'are true statutes of limitations or conditions on the right to sue.' *RTKL, supra,* 380 Md. at 677, n. 1, 846 A.2d 433. In neither case was the issue now before us presented.

382 Md. at 139–40, 854 A.2d 1208.

*Sharafeldin* went on to hold that the "limitations" in SG § 12–202 were in fact conditions precedent to the right of action. *Id.* at 148, 854 A.2d 1208. Likewise here, the use of the generally descriptive term "limitations" in reference to the MTCA's filing deadline does not change the undisputed fact that SG 12–106(b)(3) is a condition precedent to bringing suit and not a statute of limitations, nor does it indicate an intentional correlation with the "limitations" described in LE § 9–902(d).

Nonetheless, Ferguson's argument that the phrase "limitations for the right of action" makes LE § 9–902(d)'s tolling provision applicable to all time restricted rights has some

facial appeal. The two month tolling provision now contained in LE § 9–902(d) was added to the Workers' Compensation Act in 1955 as a second paragraph to Maryland Code (1951), § 59 of Article 101. *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 219, 492 A.2d 1286 (1985). The original language also referred to "limitations" on "rights of action":

> When any employee has a right of action under this section against a third party, the period of limitations for such action, as to such employee, shall not begin to run until two months after the first award of compensation made to such employee under this article, and this section shall apply to past and future rights of action under this section.[6]

*Id.* at 216, 492 A.2d 1286.

Prior to the enactment of this provision, the Court of Appeals held in *State use of Stasciewicz v. Parks*, 148 Md. 477, 129 A. 793 (1925), that the twelve month time limit for bringing a wrongful death action was a condition precedent to the right to bring suit. *Id.* at 482, 129 A. 793. Quoting *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), the Court wrote that "[t]ime has been made of the essence of the right and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right." *Id.* at 480, 129 A. 793.

Though there is no legislative history associated with the 1955 enactment of the tolling provision, *Smith*, 303 Md. at 219, 492 A.2d 1286, the legislature was presumably aware of the Court's earlier decision in *Parks*, and therefore, it could have used the phrase "right of action," intending it to apply the two month tolling period to statutory causes of action such as the wrongful death statute. Even if we assume, however, that the legislature intended to apply this tolling provision to the

---

**6.** The provision was later moved to § 58 of Art. 101, and eventually recodified without substantive modifications as LE § 9–902(d). *Smith*, 303 Md. at 219, 492 A.2d 1286; *Hayes*, 107 Md.App. at 600 n. 1, 669 A.2d 771.

wrongful death statute, it does not follow that the legislature also intended this provision to apply to the MTCA.

For one, the MTCA was not enacted until 1981—nearly 30 years after the addition of the tolling provision to the Workers' Compensation Act. Thus in order to apply LE § 9–902(d) to the MTCA, we would have to conclude that the legislature used the phrase "right of action" with the intent to apply the two month tolling period prospectively to any causes of action later created, including not-yet-enacted statutes waiving the State's sovereign immunity. Given the Court of Appeals' insistence that "[t]he General Assembly must waive immunity either directly or by necessary implication," and its corresponding refusal to expand the State's waiver of its immunity by "judicial fiat," we decline to adopt such a sweeping interpretation. *Sharafeldin*, 382 Md. at 140, 854 A.2d 1208; *Dept. of Nat. Res. v. Welsh*, 308 Md. 54, 58, 521 A.2d 313 (1986).

The characterization of LE § 9–902(d) as an exception to the general statute of limitations set by CJ § 5–101 also precludes its application to the MTCA. *See Hayes*, 107 Md. App. at 599, 669 A.2d 771 (stating that LE § 9–902(d) operates "[a]s an exception to the general three-year statute of limitations involving a tort complaint"); *Smith*, 303 Md. at 229, 492 A.2d 1286 (1985) (construing the predecessor to LE § 9–902 as "tolling ... the otherwise applicable statute of limitations [set by C & JP § 5–101]"). As *Waddell* and *Johnson* make clear, tolling provisions aimed at CJ § 5–101 are inapplicable to conditions precedent.

*Waddell* addressed the question of whether CJ § 5–201, which tolls the general period of limitations in CJ § 5–101, also tolls the time limitation in the Wrongful Death Statute, CJ § 3–904(g). 331 Md. at 53–54, 626 A.2d 353. The Court noted its previous determination that the time limitation on a wrongful death action was a condition precedent rather than a statute of limitations, and concluded: "Once it has been established that section 3–904(g) is a condition precedent, as opposed to a statute of limitations, it follows inexorably that it does not fit within the prescription of section 5–101. Conse-

quently, section 5–201 does not save a cause of action for wrongful death . . . ." *Id.* at 60, 626 A.2d 353.

In *Johnson,* the Court cited *Waddell* to hold that CJ § 5–201 did not extend the MTCA's then 180–day administrative claim requirement.[7] 331 Md. at 290, 628 A.2d 162. The court again noted that "the tolling provision in [CJ] § 5–201 is inapplicable to a condition precedent, as opposed to a statute of limitations," and observed that "[t]he Maryland Legislature has not, in any way, indicated that the Maryland general tolling statute should be applicable to the [MTCA's] 180–day claim requirement." *Id.* (quotation marks omitted).

We similarly lack sufficient indication, "either directly or by necessary implication," of an intent by the Legislature to apply LE § 9–902(d) to the MTCA's three year filing deadline, and thus we refuse to give it such an application by "judicial fiat."

## 2. *Relation Back*

Ferguson next contends that her amended complaint should relate back to the filing date of her original complaint because it merely corrected a misnomer of the proper defendant. Indeed, an amendment that corrects the name of a party relates back to the original filing date. *Williams v. Hofmann Balancing Techniques, Ltd.,* 139 Md.App. 339, 364–65, 776 A.2d 4 (2001); *see* Rule 2–341(c) ("An amendment [to a complaint] may seek to . . . correct misnomer of a party[.]"). The addition of a new party, however, does not relate back. *Williams,* 139 Md.App. at 365, 776 A.2d 4. "The critical factors [for determining whether an amendment corrects a misnomer, and therefore relates back,] are (1) who was the appropriate defendant, and (2) whether that party had timely notice of its intended status as defendant." *Id.* at 365, 116 A. 570. Stated another way, whether an amended complaint relates back "ordinarily depends upon whether the 'correct' defendant was intended to be sued originally and whether the

---

**7.** This claim requirement has since been extended to one year. *See* SG § 12–106(b)(1).

'correct' defendant would be unfairly prejudiced by allowing the amendment to relate back to the time of the filing of the original complaint." *Greentree v. Fertitta,* 338 Md. 621, 625, 659 A.2d 1325 (1995).

Under Ferguson's theory, "[t]he corrected misnomer relates back to the original filing, because all parties—plaintiff and defendant—knew prior to the running of the statutory deadline that the correct defendant had been misnamed." The State counters by arguing that the relation back doctrine does not apply to a condition precedent, and that the amended complaint did not correct a misnomer, but instead, it added a new party.

The parties have not cited any case law as to whether the relation back doctrine applies to a condition precedent, nor are we aware of any decision by a Maryland court that directly addresses this question. *See Knauer v. Johns–Manville Corp.,* 638 F.Supp. 1369, 1379 (D.Md.1986) (stating that the relation back rule "appears not to have been used by any Maryland court to allow a claim to escape the bar of the time provisions of Maryland's Wrongful Death Act"). A footnote in *Barbre v. Pope,* 402 Md. 157, 935 A.2d 699 (2007), rejected an argument for relation back under the MTCA's notice provision, SG § 12–106(b)(1), stating that "[t]he MTCA notice provision, however, is a condition precedent to the initiation of an action under the MTCA which must be met, as opposed to a statute of limitations for which relation back may apply." *Id.* at 177 n. 16, 935 A.2d 699 (internal quotation marks and citation omitted). This issue, however, was not directly before the Court in *Pope.* Thus, while we ultimately follow *Pope's* assessment, we shall conduct a more comprehensive analysis of the issue here.

The federal courts appear to allow relation back in suits under the Federal Tort Claims Act (FTCA), which is similar in many respects to the MTCA.[8] Most recently, the Seventh

---

**8.** Like the MTCA, "[t]he FTCA waives the sovereign immunity of the United States with respect to tort claims, *see* 28 U.S.C. § 2674, and

Circuit permitted relation back in an FTCA suit involving circumstances much like those here. *Jackson v. Kotter*, 541 F.3d 688 (7th Cir.2008). In *Jackson*, the district court dismissed a prison inmate's FTCA claim against several prison officers because they were not proper defendants under the FTCA. *Id.* After the inmate amended his complaint to substitute the United States as the defendant, the district court determined the action was time-barred because it was filed more than six months after the inmate had exhausted his administrative remedies under the FTCA. *Id.* The Seventh Circuit reversed, holding that the relation back doctrine in Federal Rule of Civil Procedure 15(c) applied to the FTCA, and that the inmate's amendment met the criteria for relation back under the Rule. *Id.* at 696–97.

The Seventh Circuit's decision to allow relation back in a FTCA suit relied heavily on *Scarborough v. Principi*, 541 U.S. 401, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). *Scarborough* involved the fee application provision in the Equal Access to Justice Act (EAJA), which allows a party prevailing against the United States to recoup fees from the government if the application is filed within 30 days of the judgment and, among other things, alleges that the Government's position in the underlying lawsuit "was not substantially justified." *Id.* at 405, 124 S.Ct. 1856; 28 U.S.C. § 2412(d)(1)(B). The initial fee application filed by Scarborough's counsel omitted this allegation, and an amended application adding the required allegation was not filed until after the 30 day period expired. *Id.* The Supreme Court held that the amendment was permitted under the relation back doctrine, and that Scarborough was, therefore, entitled to a hearing on the merits of his application. *Id.* at 406, 124 S.Ct. 1856.

---

provides the exclusive remedy to compensate for a federal employee's tortious acts committed within his or her scope of employment. *See* 28 U.S.C. § 2679." *Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir.2000). In order to maintain an action under the FTCA the claimant must file a claim with "the appropriate Federal agency within two years after such claim accrues," institute the action within six months of final denial of the claim by that agency, 28 U.S.C. §§ 2401(b), 2675(a), and name the United States as the sole defendant. *Roman*, 224 F.3d at 27.

In response to the government's argument that the EAJA's waiver of sovereign immunity for fees was conditioned on strict compliance with the filing requirements, the Court recounted its decisions in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), and *Franconia Associates v. United States,* 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002):

> *Irwin* involved an untimely filed Title VII employment discrimination complaint against the Government. Although the petitioner had missed the filing deadline, we held that Title VII's statutory time limits are subject to equitable tolling, even against the Government. Similarly, in *Franconia,* we rejected an "unduly restrictive" construction of the statute of limitations for claims filed against the United States under the Tucker Act.
>
> In those decisions, we recognized that "limitation principles should generally apply to the Government 'in the same way that' they apply to private parties." Once Congress waives sovereign immunity, we observed, judicial application of a time prescription to suits against the Government, in the same way the prescription is applicable to private suits, "amounts to little, if any, broadening of the congressional waiver." We further stated in *Irwin* that holding the Government responsible "is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation."

*Scarborough,* 541 U.S. at 420–21, 124 S.Ct. 1856 (citations and footnotes omitted).

A number of other federal courts of appeal have either expressly allowed relation back under the FTCA where the United States was substituted for an improperly named defendant, or have implicitly recognized the possibility of relation back under the FTCA but refused to apply it based on a failure to give timely notice to the United States.[9] *See, e.g.,*

---

**9.** Fed. R. Civ. Pro. 15(c)(1)(C) stipulates that an amendment changing a party name relates back only when the party being brought in by the

*Roman,* 224 F.3d at 28 (refusing to allow relation back where the United States did not receive sufficient notice); *McGuire v. Turnbo,* 137 F.3d 321, 325 (5th Cir.(Tex.) 1998) (allowing amended complaint substituting the United States for federal employees to relate back where the United States received timely notice); *Allgeier v. United States,* 909 F.2d 869, 873 (6th Cir.1990) (holding that the United States must receive proper notice within the period designated by statute for an amendment substituting the United States as the proper party to relate back); *Weisgal v. Smith,* 774 F.2d 1277, 1279 (4th Cir.1985) (refusing to allow relation back where the United States did not receive timely notice).

Federal decisions refusing to allow relation back have done so in the context of amendments that sought to add new claims or parties to the initial administrative claim, rather than the subsequent district court complaint. *See, e.g., Lee v. United States,* 980 F.2d 1337, 1338 (10th Cir.1992); *Manko v. United States,* 830 F.2d 831, 841 (8th Cir.1987); *Withrow v. United States,* No. 5:05–152–JMH, 2005 WL 2403730, at *5–6, 2005 U.S. Dist. LEXIS 45434, at *16–17 (E.D.Ky. Sept.28, 2005). Thus, these cases are not analogous to the situation here.

Notwithstanding the federal practice of allowing relation back under the FTCA, several considerations compel us to reach an opposite result regarding the MTCA. First, we have described federal cases involving the relation back of amendments as having "limited value because Federal Rule 15(c) contains an express relation back provision, while the Maryland rules do not." *Williams,* 139 Md.App. at 371, 776 A.2d 4.

Second, we question the Seventh Circuit's conclusion that "Supreme Court precedent [established by *Scarborough* ] applies with equal force to the judicial application of [the federal relation back rule] to an FTCA action against the United States." The Supreme Court observed that the statutory

---

amendment receives notice of the action within the period specified by Fed. R. Civ. Pro. 4(m) for serving the summons and complaint.

requirement at issue in *Scarborough* was a "think twice prescription that stems the urge to litigate irresponsibly" and did not "serve an essential notice giving function." *Scarborough,* 541 U.S. at 416, 124 S.Ct. 1856 (internal quotation marks and citation omitted). The time limitations in the FTCA, however, are intended to "encourage[e] prompt presentation of claims against the federal government." *Hart v. DOL ex rel. United States,* 116 F.3d 1338, 1341 (10th Cir.1997) (citation omitted). In addition, the Supreme Court later described *Scarborough* as involving "a mode of relief ... ancillary to the judgment of a court that already had plenary jurisdiction," *Bowles v. Russell,* 551 U.S. 205, 211, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), whereas the FTCA's time limitations are generally considered jurisdictional in nature. *See T.L. v. United States,* 443 F.3d 956, 961 (8th Cir.2006) (and cases cited therein).

Finally, while the Supreme Court in *Irwin* recognized that a jurisdictional prerequisite to the federal government's waiver of sovereign immunity may be subject to equitable tolling, the Court of Appeals of Maryland declined to follow *Irwin* with respect to conditions precedent under Maryland law. As noted above, in *Sharafeldin* the Court considered whether SG § 12–202's one-year filing deadline for contract actions against the State was a statute of limitations waivable by State agencies, or a condition to the right of action itself. 382 Md. at 132, 854 A.2d 1208. Discussing *Irwin,* the Court observed that until 1990 the federal courts had construed time limitations in federal statutes waiving sovereign immunity as establishing preconditions to the courts' jurisdiction, which could not be waived or tolled. *Id.* at 142–43, 854 A.2d 1208. The Court noted that *Irwin* "shattered" this "nearly universal construction" by adopting a general rule "equat[ing] suits against the Government with suits against private parties, and ... thus h[olding] that 'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.'" *Id.* at 144, 854 A.2d 1208 (quoting *Irwin,* 498 U.S. at 95–96, 111 S.Ct. 453). The Court described the "disarray" *Irwin* caused in

lower federal courts regarding their interpretation of the FTCA:

> Prior to *Irwin*, both [of 28 U.S.C. 2401(b)'s limitations] requirements had been regarded as jurisdictional, and the failure to comply with either one doomed the action. There are now conflicting decisions as to whether equitable tolling may excuse a failure to comply with either or both.
>
> *Irwin* did not involve or directly address statutes such as 28 U.S.C. § 2401, and much of the language in the opinion was thus essentially obiter dicta with respect to that statute. Most of the lower Federal courts [that] have given credence to that language, however, have shifted their previously-held view, and have applied equitable tolling principles to untimely claims made to the administrative agency or to untimely lawsuits after denial of the claim. Not all of the Federal courts have taken that approach, and there appears to be a split in some of the circuits.

*Id.* at 146, 854 A.2d 1208; *see also id.* at 145 n. 6, 854 A.2d 1208 (summarizing the position of various federal courts on whether the FTCA's filing requirements are subject to equitable tolling).

The Court, however, ascribed only limited relevance to this line of federal jurisprudence:

> We are not bound, of course, by any of these Federal decisions, including *Irwin*. Their only relevance is in how they might impact our view of the legislative intent behind SG § 12–202, which is the controlling consideration. If that statute had been enacted after 1990, we might embrace the fiction that the Legislature was aware of the Supreme Court's analysis in *Irwin* and construe § 12–202 in accordance with it. The fact is, however, that when the Legislature first waived immunity in contract actions in 1976 and later re-enacted that waiver as part of the State Government Article, the Federal decisions, including the Supreme Court's decision in *Soriano[ v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) ], were nearly all to the effect that the analogous time limitations were, indeed,

conditions to the waiver of immunity and were not subject to waiver or tolling. For our purposes, therefore, the relevant Federal law is that which existed before *Irwin*. Allied with the principle applied in the pre-*Irwin* decisions, arising from the language of the statute itself, is the well-recognized but more general rule, to which we have adhered, that, where a statute creates a new cause of action and fixes a time within which a suit under the statute must be filed, "the time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone."

*Id.* at 146–47, 854 A.2d 1208 (quotation and citation omitted).

Thus, *Sharafeldin* established a bright line between the treatment of conditions precedent under Maryland law, and the more liberal treatment of jurisdictional requirements under the FTCA and similar statutes by recent federal court decisions. Moreover, like SG § 12–202, SG § 12–106 was enacted prior to the Supreme Court's decision in *Irwin*, thus we cannot impute an awareness of *Irwin* onto the legislature at the time of the enactment.[10] We, therefore, adhere to the longstanding principle under Maryland law that the failure to meet a condition precedent extinguishes the right itself. Accordingly, when Ferguson failed to file her claim against the State within time period prescribed by SG § 12–106(b)(3), her right to sue the State was lost and there was no cause action to which it could relate back.

█ Even if we were to apply the relation back doctrine to SG § 12–106, Ferguson's amended complaint did not correct a misnomer and, thus, does not relate back to the original filing date. As the State points out, Ferguson's amended complaint "added an entirely new party, the State of Maryland, and ...

---

**10.** SG § 12–106(b) was twice amended after *Irwin*, but neither of those amendments reflect a response to the Supreme Court's decision. The 1994 amendment modified SG § 12–106(b)(3)'s filing deadline, and the 1995 amendment extended SG § 12–106(b)(1)'s deadline for submitting a claim to the State Treasurer. *See* 1994 Md. Laws 2640; 1995 Md. Laws 2612.

the State is a legal entity separate and apart from its employee." *See Nam v. Montgomery County*, 127 Md.App. 172, 186, 732 A.2d 356 (1999) ("[I]f an amendment merely corrects the name of an original party, as opposed to adding a new party, the doctrine is applicable. Conversely, if a new defendant is added, the doctrine of relation back does not apply." (citations omitted)). Indeed, Ferguson's addition rather than substitution of the State as defendant is readily apparent from the caption on the amended complaint which names "Georgia Bohlayer Loder" and "State of Maryland" as defendants. Ferguson's intent to add the State as a distinct defendant is further evidenced by her addition of a new count in the amended complaint charging the State with negligent entrustment. Accordingly, Ferguson's complaint does not meet the criteria for relation back under Maryland law.

### 3. *Substantial Compliance*

■ Ferguson finally contends that her case should be allowed to proceed because she substantially complied with the MTCA. Ferguson argues that we should recognize substantial compliance under the MTCA in this case because within the three year deadline the State was aware of the claim against its employee, knew the action should have been filed against the State, and answered the complaint on behalf of its employee.

We have defined substantial compliance as a "communication that provides the State requisite and timely notice of facts and circumstances giving rise to the claim." *Candelero*, 152 Md.App. at 196, 831 A.2d 495. In *Candelero* the claimant argued that he substantially complied with SG § 12–106(b)(1) where he mailed his claim to the Treasurer within the one year of the date of injury, but that claim was not received until after the one year period. *Id.* at 195, 831 A.2d 495. We acknowledged the existence of a substantial compliance argument under the MTCA, but noted:

"The doctrine of substantial compliance, however, is not license to ignore the clear mandate of the MTCA," *Chinwuba[ v. Larsen]*, 142 Md.App. 327, 355, 790 A.2d 83 (2002),

and "cannot serve as a springboard for judicial legislation. Provisions such as this, and the canon of construction favoring a liberal interpretation of remedial legislation, are helpful in resolving ambiguities in statutes, but do not permit us to expand the statute to afford relief where the words of the statute bar that relief." *Simpson v. Moore,* 323 Md. 215, 227, 592 A.2d 1090 (1991).

*Id.* at 196–97, 831 A.2d 495

To illustrate this point, we compared *Simpson* with *Conaway v. State,* 90 Md.App. 234, 600 A.2d 1133 (1992):

In *Simpson,* the case was dismissed because the claimant failed to file a written claim within 180 days after the accident. The claimant argued that the legislature intended the—notice requirement in SG § 12–106(b)(1) to contain the same provision as that contained in [CJ § 5–306] permitting waiver of the notice requirement, under certain circumstances, in a case filed under the Local Government Tort Claims Act. The Court of Appeals declined to incorporate that waiver provision into SG § 12–106, stating that the legislature could have done so, if it wanted, by amendment. Thus, because there was an "outright failure" by the claimant to file a written claim, and compliance was "a condition precedent to the maintenance of a claim against the State," the doctrine of substantial compliance was not applicable. *Simpson,* 323 Md. at 228–29, 592 A.2d 1090.

In *Conaway,* a prisoner filed a timely claim with the Treasurer, but did not demand specific damages as required by SG § 12–107(a). Applying the doctrine of substantial compliance, we held that while the claim "did not literally comply with all of the requirements of SG § 12–107(a)," it provided the State with "sufficient written notice of the circumstances" of the accident to allow it to "investigate the claim and respond either by settlement or defense." *Conaway,* 90 Md.App. at 250, 600 A.2d 1133 (quoting *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980)). In so holding, we distinguished Simpson, stating that the claimant

in that case had "provided no notice to the State." *Conaway,* 90 Md.App. at 241, 600 A.2d 1133. *Id.* at 197–98, 831 A.2d 495.

Following *Simpson,* we concluded in *Candelero* that substantial compliance did not apply because untimely submission of notice amounts to "an outright failure to comply." *Id.* at 198, 831 A.2d 495. We observed that "[t]he primary purpose of [the notice] requirement is to permit the State to timely investigate the incident and to respond to the claim" and that "[t]he legislature has set the notice period at one year." *Id.* Thus, we reasoned that there was "little difference" between an untimely notice and a complete failure to provide notice. *Id.*

More recently, the Court of Appeals affirmed our rejection of a substantial compliance argument where the claimant failed to provide written notice to the State Treasurer within one year of the injury. *Pope,* 402 Md. at 181, 935 A.2d 699. The claimant argued that timely notice to a county commissioner substantially complied with the SG § 12–106(b)(1) because the State was aware of the incident and the County to which he gave notice was ultimately responsible for paying any judgement. *Id.* at 178–80, 935 A.2d 699. We recognized the equitable appeal of the claimant's argument, but stated that accepting his argument would "improperly substitute ... alternate policy considerations, for the judgment of the legislature enunciated in SG section 12–106(b)." *Pope v. Barbre,* 172 Md.App. 391, 407, 915 A.2d 448 (2007), *aff'd in part, modified in part,* 402 Md. 157, 935 A.2d 699.

This case is not precisely analogous to *Pope, Simpson* and *Candelero* because it involves SG § 12–106(b)(3)'s deadline for filing the action, rather than SG § 12–106(b)(1)'s notice requirement. Nonetheless, the same rationale applies here. There is nothing ambiguous about the three-year filing deadline set by the legislature. Thus, we cannot use substantial compliance as "a license to ignore the clear mandate of the MTCA." Ferguson's failure to sue the State within three years of the date of her accident was an outright failure to

comply with the MTCA, and the circuit court properly dismissed her complaint as a result.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**